IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 26, 2015 Session

## SYLVIA FOLGER v. ROBERT FOLGER

**Appeal from the Chancery Court for Cumberland County**
**No. 2012CH575     Ronald Thurman, Chancellor**

---

**No. E2014-02069-COA-R3-CV-FILED-JANUARY 28, 2016**

---

This appeal arises from a divorce.  Sylvia Folger ("Wife") sued Robert Folger ("Husband") for divorce in the Chancery Court for Cumberland County ("the Trial Court").  After a trial, the Trial Court, among other things, awarded Wife transitional alimony.  On appeal, Wife raises a number of issues.  Because of Wife's pronounced economic disadvantage relative to Husband, we modify the judgment of the Trial Court to increase the amount of Wife's transitional alimony, and remand this case for the Trial Court to award Wife attorney's fees as alimony in solido as well as her reasonable attorney's fees incurred on appeal.  Otherwise, we affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Daniel H. Rader, IV, Cookeville, Tennessee, for the appellant, Sylvia Folger.

Michael R. Giaimo, Cookeville, Tennessee, for the appellee, Robert Folger.

# OPINION

## Background

Husband and Wife married in 1993. No children were born of the marriage. Wife filed suit for divorce in August 2012. Husband filed an answer and counterclaim in response. The case went to trial in July and August 2014. We now review the testimony from the witnesses relevant to the issues on appeal.

Wife, age 58 at trial, resided in Cookeville, Tennessee. Wife's marriage to Husband was her second marriage. Wife lived in an apartment following the sale of the marital residence, paying $1,400 per month in rent. Wife grew up in Ohio and attended college in Kentucky. In 1978, Wife graduated from Eastern Kentucky University with a degree in finance. Wife has worked in accounting jobs for many years. At the time of trial, Wife worked at J & S Construction. Wife earned a wage of $23.85 per hour. In 2010, Wife earned $54,000. In 2011, Wife earned $41,941. Wife testified to neck surgery she had undergone, but this medical condition did not prevent Wife from working outright. Wife also had suffered from back problems.

Wife testified that the parties previously had resided in Kentucky, where Husband was a bank executive. Due to loan losses, Husband lost his job. Wife stated that her previous husband provided a contact name for Husband at State Farm. Husband was given an agency in Crossville, Tennessee. During this period, Wife assisted Husband with his work. Wife later moved on to her present employment at J & S Construction. J & S provides a number of benefits to Wife, including health insurance, a 401k, and vacation time. Wife testified that during the marriage, Husband had given Wife $6,000 per month with which to handle financial needs. Wife bases her request on appeal for $6,000 in monthly alimony in part based on this record. Wife acknowledged that Husband lives in a $500 per month apartment, but stated that her more expensive apartment was due to different environments between Cookeville and Crossville.

Wife testified to the problems that developed in the marriage. Wife stated that Husband sometimes called her various expletives. Moreover, Wife alleged that Husband had an adulterous affair with Connie Fuell ("Fuell"), a teller at Cumberland County Bank. Considerable testimony was devoted to Wife's allegations. Wife asserted that she found a bra in her bedroom that did not belong to her. Wife even went to the length of tracking Husband's movements on his vehicle. Nevertheless, Wife provided no concrete evidence that Husband actually had an affair with Fuell.

Fuell, the alleged paramour, testified. Fuell, 53, was employed at Cumberland County Bank. Fuell saw Husband almost every day as he banked at her

place of employment. Fuell stated that she did speak to Husband on the phone after she witnessed a man electrocuted in a work accident, and she needed someone to talk about it. Fuell, however, strongly denied having an affair with Husband.

Husband, age 64 at trial, testified. Husband had been married once before. Husband is from Kentucky, and he now lives in Crossville. Wife had exclusively possessed the marital residence for two years until it was sold. Husband is an agent with State Farm Insurance Company. Husband received his contract in 2005. Husband's agency taxes are filed as a subchapter "S" corporation. Husband is paid a commission as a sole proprietor. Husband stated that he does not actually own the insurance business, and that he cannot transfer the agency. Husband's gross income had increased over the past five years. Husband stated that he will continue to draw revenue from State Farm for five years after he retires from life insurance premiums on policies he sold. Husband agreed that the lifestyle he and Wife enjoyed was upper middle class. Husband's gross revenue for 2013 was around $360,000.

Husband earned a communications degree from Western Kentucky University in 1973. Husband did post-graduate work at the Graduate School of Banking at Louisiana State University. Husband suffered a severe medical problem when he contracted aplastic anemia in 2008. Husband spent two years receiving blood transfusions. Regarding Wife's allegations that he had committed adultery, Husband was adamant that he had not done so.

Ted Austin Burkhalter, Jr. ("Burkhalter"), an attorney and certified public accountant, testified for Husband. Wife stipulated that Burkhalter was an expert in accounting. Husband had been Burkhalter's client since 2007. Burkhalter had been asked to prepare a cash flow analysis for Husband from the period of January 1, 2014 through June 30, 2014. Burkhalter used the Quicken check register to develop the cash flow analysis. The cash flow analysis reflected Husband's income and expenses over the six-month period. Burkhalter testified that Husband's expenditures were exceeding his income on a monthly basis. Income tax liability was one culprit. Effectively confronting and eliminating the income tax liability would leave Husband with little more than $1,000 per month in positive cash flow, considering his alimony and living expenses. Burkhalter testified that Husband's agency had held fairly stable in the range of $345,000 to $364,000 in revenue but that there had been a dip in new clients. Continuing his testimony, Burkhalter stated that there could be growth in Husband's business given the money Husband was spending on increased advertising. Burkhalter testified also that Husband's tax bracket would change from 32% to 35% following the divorce. Burkhalter stated that Husband's received personal income was in the range of $145,000 to $160,000 per year. Burkhalter testified that Husband had a greater probability of increasing his assets than Wife. Burkhalter stated further that the reported gross revenue

in the six month period was $181,176.41. According to Burkhalter, Husband's net income for personal use during the six month cash flow analysis period was $43,000.

In September 2014, the Trial Court entered its final decree of divorce. The Trial Court found that Wife was unable to carry her burden of proof as to the adultery allegation. The Trial Court instead declared the parties divorced. The Trial Court effectuated a division of the assets such that Wife received approximately 56% to Husband's 44%, around $650,000 in total assets divided. The Trial Court also divided an Edward Jones account and assigned Husband a life insurance policy that had been in Wife's name, items Wife asserts are in fact her separate property. The Trial Court awarded Wife transitional alimony for forty months in the amount of $2,200 per month. The Trial Court declined to award Wife her attorney's fees as alimony in solido. Husband timely appealed to this Court.[1]

## Discussion

Although not stated exactly as such, Wife raises the following issues on appeal: 1) whether the Trial Court erred in setting the amount of transitional alimony for Wife; 2) whether the Trial Court erred in finding that Wife failed to prove that Husband committed adultery; 3) whether the Trial Court erred in failing to award Wife attorney's fees; 4) whether the Trial Court erred in classifying the Edward Jones account as marital property; 5) whether the Trial Court erred in divesting Wife of a State Farm Life Insurance Policy and awarding it to Husband; and, 6) whether Wife should be awarded her reasonable attorney's fees incurred on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Our Supreme Court has discussed awards of spousal support as follows:

This Court has frequently recognized that trial courts in Tennessee have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award. *See Gonsewski*, 350 S.W.3d at 105; *Bratton v. Bratton*, 136 S.W.3d 595, 605

---

[1] Husband later asked for and received dismissal of his appeal from this Court, but Wife proceeds now in the posture of appellant and continues to raise her own issues on appeal.

(Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree,* 16 S.W.3d 356, 360 (Tenn. 2000). Because a trial court's "decision regarding spousal support is factually driven and involves the careful balancing of many factors," *Gonsewski*, 350 S.W.3d at 105 (footnote omitted), the role of an appellate court is not to second guess the trial court or to substitute its judgment for that of the trial court, but to determine whether the trial court abused its discretion in awarding, or refusing to award, spousal support. *Id.* "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). In determining whether the trial court abused its discretion, an appellate court "should presume that the [trial court's] decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski*, 350 S.W.3d at 105-06; *see also* Tenn. R. App. P. 13(d) ("[R]eview of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding [s], unless the preponderance of the evidence is otherwise.").

\*\*\*

Tennessee recognizes four distinct types of spousal support: (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1) (2010 & Supp. 2012). Alimony in futuro, a form of long-term support, is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. *Gonsewski*, 350 S.W.3d at 107. Alimony in solido, another form of long-term support, is typically awarded to adjust the distribution of the marital estate and, as such, is generally not modifiable and does not terminate upon death or remarriage. *Id.* at 108. By contrast, rehabilitative alimony is short-term support that enables a disadvantaged spouse to obtain education or training and become self-reliant following a divorce. *Id.*

Where economic rehabilitation is unnecessary, transitional alimony may be awarded. Transitional alimony assists the disadvantaged spouse with the "transition to the status of a single person." *Id.* at 109 (internal quotation marks omitted). Rehabilitative alimony "is designed to increase

-5-

an economically disadvantaged spouse's *capacity* for self-sufficiency," whereas "transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *Id.* Consequently, transitional alimony has been described as a form of short-term "bridge-the-gap" support designed to "smooth the transition of a spouse from married to single life." *Engesser v. Engesser*, 42 So.3d 249, 251 (Fla. Dist. Ct. App. 2010).

\*\*\*

Tennessee statutes concerning spousal support reflect a legislative preference favoring rehabilitative or transitional alimony rather than alimony in futuro or in solido. *See* Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Gonsewski*, 350 S.W.3d at 109. Not even long-term support is a guarantee that the recipient spouse will be able to maintain the same standard of living enjoyed before the divorce because "two persons living separately incur more expenses than two persons living together." *Gonsewski*, 350 S.W.3d at 108 (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). Although the parties' standard of living is a factor courts must consider when making alimony determinations, *see* Tenn. Code Ann. § 36-5-121(i)(9), the economic reality is that the parties' post-divorce assets and incomes often will not permit each spouse to maintain the same standard of living after the divorce that the couple enjoyed during the marriage. *Gonsewski*, 350 S.W.3d at 113. Decisions regarding the type, length, and amount of alimony turn upon the unique facts of each case and careful consideration of many factors, with two of the most important factors being the disadvantaged spouse's need and the obligor spouse's ability to pay. *Id.* at 109-10.

*Mayfield v. Mayfield*, 395 S.W.3d 108, 114-16 (Tenn. 2012).

With respect to the award of attorney's fees in divorce cases, our Supreme Court has stated:

It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code

Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011) (citations omitted).

We refer to a number of statutory factors in determining the nature and amount of alimony:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i) (2014).

We first address whether the Trial Court erred in setting the amount of transitional alimony for Wife. The Trial Court awarded Wife $2,200 per month for forty months in transitional alimony. Wife does not contest either the type or duration of alimony awarded by the Trial Court, but rather only the amount. Wife argues that the statutory factors and the facts of this case justify an award to her of $6,000 per month in transitional alimony. Husband acknowledges that he has a significantly larger income than Wife, but argues that the Trial Court did not abuse its discretion in setting the amount of alimony at $2,200 per month.

Wife, 58 at trial, has suffered from health problems including a neck condition. In terms of economic disparity, Wife earns in the range of $40,000 to $50,000 at J & S Construction. Husband's gross income is $360,000. Husband's net pay of, at a low end, $120,000 to $160,000, still is materially higher than Wife's income. Husband and Wife enjoyed an upper middle class lifestyle during the marriage. Moreover, Wife's portion of the marital estate, while significant, included many illiquid retirement assets. There is a justified need to transition Wife, 58, until a time when she may retire and draw upon her retirement resources. Husband, 64, still works and the record reflects that his business is, if anything, likely to increase, especially given his investment in advertising. Wife listed her monthly shortfall as $4,995.95, a sum Husband criticized as inflated and excessive. Nevertheless, we agree with Wife that the amount set by the Trial Court is too low given the applicable law and facts of this case. This Court does not tweak or second-guess trial courts on alimony determinations but, given the marked economic disparity going forward and the relatively affluent lifestyle previously enjoyed by Wife during the marriage, the amount of alimony set by the Trial Court is an illogical result as it falls far short of the range of acceptable figures. We, however, decline to adopt Wife's proposed figure of $6,000 as that figure also is not supported by the evidence. We instead increase

the amount of transitional alimony awarded Wife from $2,200 to $4,000 per month, an amount appropriate under the evidence including the parties' relative economic circumstances. We disturb neither the type nor duration of Wife's alimony.

We next address whether the Trial Court erred in finding that Wife failed to prove that Husband committed adultery. Much testimony and evidence in this case centered on Wife's allegations that Husband had committed adultery. Wife points to the following, among other things, as circumstantial evidence of Husband's adultery: a bra found in the parties' bedroom; certain sexual performance medication that went missing; Husband's alleged going places without legitimate explanation; and a phone call to the alleged paramour. Both Husband and the alleged paramour flatly denied the allegations, and no definitive evidence as to adultery can be found in the record. The Trial Court found that Wife failed to carry her burden as to the allegation of adultery. We find that the evidence presented by Wife purporting to prove that Husband committed adultery is inconclusive at best, and the evidence does not preponderate against the Trial Court's finding as to this issue. We affirm the Trial Court on this issue.

We next address whether the Trial Court erred in failing to award Wife her attorney's fees. Our analysis on this issue is shaped by many of the same facts considered in the transitional alimony discussion above. Wife's attorney placed an attorney's lien to be paid from the proceeds from the sale of the marital home. While Husband technically is correct that Wife had the funds to pay her attorney's fees, Wife needed to draw significantly upon one of her few liquid assets to do so. Husband, meanwhile, as has been noted, is in a significantly better economic position relative to Wife. This being the case, we find that Wife has the need, and, Husband the ability to pay attorney's fees to Wife. We remand for the Trial Court to determine an award of reasonable attorney's fees to Wife as alimony in solido.

We next address whether the Trial Court erred in classifying the Edward Jones account as marital property. The Edward Jones account held $78,818, and Husband was awarded nearly two-thirds of the amount. Wife contends that the funds were her separate property, accumulated from child support payments paid by her previous husband. However, Husband testified that the account also contained funds from Husband's income. According to Husband: "The monies, you couldn't distinguish and say, 'that was child support money.' . . . It was commingled money, and it went into a joint investment account the same way." We find that the evidence does not preponderate against the Trial Court's findings relevant to and its characterization and division of the Edward Jones account.

We next address whether the Trial Court erred in divesting Wife of a State Farm Life Insurance Policy and awarding it to Husband. Husband had created a life

insurance policy insuring his life and in Wife's name insuring him in the amount of $1,000,000. At trial, Husband stated that he wanted this policy back. The evidence was that the insurance policy had no cash surrender value. The Trial Court assigned the insurance policy to Husband. Wife argues that the insurance policy was her separate property and she should be allowed to keep it to insure her interest in Husband's ongoing obligations to her. Wife's desire to retain this policy is understandable, but she has cited no law providing that she is absolutely entitled to such insurance security. This especially is the case when one considers that Wife is slated to receive alimony for a period of forty months only, after which it will terminate. It appears to this Court that the Trial Court was attempting to extricate these parties from one another's financial affairs as best as possible in the course of granting their divorce. We find that the Trial Court committed no reversible error in awarding the life insurance policy at issue to Husband.

The final issue we address is whether Wife should be awarded her reasonable attorney's fees incurred on appeal. We already have discussed Wife's need for attorney's fees above. Similarly, Wife should not be forced to further dissipate her assets to pay her attorney's fees on appeal. In light of all relevant circumstances, and in the exercise of our discretion, we hold that Wife should be awarded her reasonable attorney's fees incurred on appeal. We remand for the Trial Court to determine an award to Wife of reasonable attorney's fees incurred by her on appeal.

In summary, we increase Wife's transitional alimony from $2,200 to $4,000 per month, while not disturbing either the type or the duration of the alimony. We remand for the Trial Court to determine and award reasonable attorney's fees to Wife as alimony in solido, as well as Wife's attorney's fees incurred on appeal. Otherwise, we affirm the judgment of the Trial Court. The judgment of the Trial Court is affirmed as modified.

## Conclusion

The judgment of the Trial Court is affirmed as modified, and this cause is remanded to the Trial Court for collection of the costs below, and for the Trial Court to determine and award reasonable attorney's fees to Wife as alimony in solido, as well as Wife's attorney's fees incurred on appeal. The costs on appeal are assessed against the Appellee, Robert Folger.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

-10-